## Abner Taylor v. J. M. Robinson.

### No. 2627.

1. **Held—Holding.**—As a technical term *held* embraces two ideas, that of actual possession of some object of dominion or property, and that of being invested with the legal title or right to hold or claim such possession.

2. **Contract for the New Capitol.**—Under the contract for building the new capitol the contractor did not take actual possession nor had he the legal or equitable title to the lands until they should be earned in the work of construction of the building.

3. **Same—Lease.**—Under the supplemental contract and for additional work the unearned lands were leased to the contractor. Whether such lease was legal or not the holding of these unearned lands was under the lease.

4. **Lands held under Contract of Purchase from the State.**—The laws for the sale of the public school lands, etc., provided for an actual holding of the lands so purchased, on terms stipulated in the contracts of sale.

5 **Same—Taxation of the Capitol Lands.**—The unearned lands leased to the contractor were not subject to taxation as lands held under contract of purchase from the State.

APPEAL from Dallas. Tried below before Hon. Geo. N. Aldredge. The opinion gives the facts.

*Robertson & Coke*, for appellant. — 1. Under the original contract the appellant had neither right over nor interest in the lands of which any kind of holding could be affirmed. On January 18, 1882, a contract was made and signed between the State of Texas and Matthias Schnell, by the terms of which Matthias Schnell agreed to construct for the State a capitol building according to certain plans and specifications, and to complete and deliver the same to the State by January 1, 1888, and the State as compensation was to pay to him three million acres of land theretofore reserved and surveyed into leagues for that purpose, and was to convey to Schnell " complete and perfect " title to said lands in specified installments as the work progressed. Nothing was stipulated as to the possession of the unearned lands.

Shortly after the making of said contract appellant succeeded to the position and rights of Schnell in and under said contract.

On July 25, 1885, a supplemental contract was made, by the terms of which important changes were made in the original contract. Granite was substituted for limestone and the time was extended from January 1, 1888, to January 1, 1890. As part of this contract on the same day a separate contract was entered into by which the State leased to appellant the unearned lands, appellant to pay as rental six cents per acre per annum, but if appellant performed his contract and earned the lands then he was to pay no rent.

The court in the findings held that appellant received possession of the lands under the contract and lease of July 25, 1885.

The lands thus held by the appellant on January 1, 1886, in Oldham County, were listed and assessed for State and county taxes for that year against appellant as owner, and those so held by him on January 1, 1887, were listed and assessed against him as owner for the year 1887. The taxes for the year 1886 thus assessed amounted to $5287.64, and for the year 1887 to $4087.17.

These lands on January 1, 1886, or January 1, 1887, had not been earned by or conveyed to appellant under the original contract, but they were afterwards, within three years from July 25, 1885, so earned and conveyed.

On August 23, 1888, the defendant as collector of taxes for Oldham County was proceeding to enforce payment of the taxes aforesaid, when appellant to prevent irreparable injury paid said taxes under protest and immediately brought this suit. It was admitted that defendant had not paid the money to the State or county, but held the same to abide the event of this suit.

As findings of law the court below held:

(1) "That article 4691 of the Revised Statutes of Texas, as far as it applies to persons holding lands under a contract of purchase, is constitutional and valid.

(2) "That the plaintiff held the lands described in his petition after July 25, 1885, until they were earned and conveyed to him, under a contract of purchase within the true intent and meaning of said article 4691 of Revised Statutes, and the taxes exacted of him by defendant for the years 1886 and 1887 were proper and legal and plaintiff is not entitled to recover." Rev. Stats., art. 4691; Thompson v. Daugherty, 71 Texas, 192.

2. The appellant's holding on January 1, 1886, and on January 1, 1887, was under the contract and lease of July 25, 1885, and these were not a contract of purchase, but related exclusively to the possession of the lands between their date and the date when the lands should be earned or the contract be abandoned.

3. If the original contract and the supplemental contract and lease of July 25, 1885, may be considered as one and as if made at the same time the parties had the power to make appellant's holding of the unearned lands a tenancy or purchaser's occupation, and they made it a tenancy.

4. The contract under which appellant held the lands on January 1, 1886, and January 1, 1887, the event determined to be a lease for a term less than three years.

5. A statute imposing upon a lessee the same tax as if he was owner would be unconstitutional and void. Thompson v. Daugherty, 71 Texas, 192.

6. It was not the intention of the parties in making the contract that appellant should acquire any taxable interest in the lands until they were earned.

7. It was not intended by article 4691 of Revised Statutes to impose a tax upon the lands held as the appellant held the unearned lands. Potter's Dwarris, 193; Farrington v. Wilson, 29 Wis., 383.

*Brown, Watts & Hall*, for appellee. — 1. Appellant held the lands on January 1, 1886, and January 1, 1887, under a valid contract for the purchase thereof. Appellant's statement under his first assignment of error is adopted with these additions: In the supplemental contract it is provided that " the lease of even date, etc., giving to the capitol contractor the absolute right of possession to the capitol lands upon the conditions contained therein, is hereby made a part of this contract as fully and expressly as if the same had been at length herein set forth;" and it is further therein provided that " if said Taylor or his assigns complete the building of said capitol according to contract, then no rent whatever is to be paid for said lands, said lands being then the property of said Taylor or his assigns, free from any claim on the part of the State for rent, as though this agreement had not been made." And it is also expressed therein that if Taylor abandons his contract, or if it be terminated before the building is completed, "then he is to pay rent at the rate above mentioned for all lands which may not then have been earned by him." Appellant was engaged in constructing the capitol under the original and supplemental contracts from and after July 25, 1885, and completed the same after January 1, 1887. Gen. Laws, 1879, p. 112, and p. 114, secs. 15, 16; Rev. Stats., art. 4691, and art. 4673, subdiv. 3; Constitution, art. 16, sec. 57; Daugherty v. Thompson, 71 Texas, 192; Taylor v. Robertson, 34 Fed. Rep., 678.

2. Appellant did not hold said lands under a lease for a term less than three years on the 1st day of January, 1886, and on the 1st day of January, 1887.

3. Said lands were duly and legally listed and assessed for State and county taxes against appellants for the years A. D. 1886 and 1887.

WALKER, ASSOCIATE JUSTICE.— Abner Taylor, the contractor for building the new State capitol, appeals from a judgment against him in a suit against appellee, the tax collector of Oldham County, for money paid him upon unearned capitol lands included within the contract for building the new capitol, assessed for the years 1886 and 1887.

The only question submitted to the court is whether upon the facts shown the lands described in the petition were " held under a contract for the purchase thereof belonging to the State."

It is not questioned that the Legislature had the power to include lands so held as subject to taxation. The article 4691 of Revised Statutes so providing was in force at the execution of the contract for building the capitol. It would enter into all contracts subsequently made for the

purchase of lands belonging to the State. If the contract in its legal effect places these lands within the meaning of the statute any intent otherwise on the part of the State officials in making it would be immaterial. They could not exempt the lands from the effect of the statute had they attempted to do so.

The original contract for building the new capitol, after stipulating the dimensions, material, and style of workmanship required, the time within which it was to be constructed, and after the stipulations undertaken by the contractor, obliges and binds the State "to convey to said party of the second part (the contractor) the complete and perfect title to three million acres of land situated in the State of Texas and in the counties of Dallam, Hartley and Oldham," and in section 19 of the contract "the party of the second part shall receive in the manner herein set forth titles to the lands herein agreed to be conveyed in the numerical order heretofore mentioned, at successive stages of the construction, as follows," etc.

July 25, 1885, after the work of construction had been entered upon, a supplemental contract was executed making changes in the style and material and extending the time within which it should be completed. It was further stipulated that the lease of even date "should be a part of the contract as fully and expressly as if the same had been at length set forth."

The *lease* contained the following: * * * "And whereas, it was an important consideration in inducing said Taylor to consent to said changes that his right to use the lands set apart to pay for the erection of said building should be settled, it is therefore agreed between said State and said Taylor as follows: 1. Said State hereby leases to said Taylor and his assigns upon the terms hereafter stated all of three million acres of land set apart for the building of a new State capitol not yet earned by said Taylor, said land being described as follows," etc.

It was further stipulated that Taylor should pay rent at six cents per acre; but if Taylor should "complete the capitol according to contract then no rent whatever is to be paid for said lands, said lands then being the property of said Taylor or his assigns free from any claim on the part of the State for rent as though this agreement had not been made. * * * Said Taylor and his assigns are to have and are hereby vested with full rights to possess, use, and enjoy all of said lands until," etc.

After this lease was made, and under it, the contractor took and held possession of the land. Possession theretofore had been denied him.

It was admitted that all the lands had been earned and conveyed to Taylor after January 1, 1887, and within less than three years from July 25, 1885.

Considering the contract with reference to the main object on the part of the State, it was made for the construction of the new capitol build-

ing.   The land had been set apart by law for the purpose and was used in payment as the consideration or price, to be conveyed in a stipulated order of surveys, in parcels, from time to time when earned in the progress of the work of construction under the contract.   No money valuation or price was fixed to the lands.   The land was as a fund to be passed to the contractor in payment upon the several stages toward completion of the work.

On the other hand, Taylor's object in the contract was the acquisition of the land—of the several surveys named and in the order as in the contract—the consideration on his part being the labor and materials furnished upon the building.   The contract provided a mode by which he could earn them and to have title to them in parcels when earned.   Until earned he had but the contract by which he could earn them; and when earned his right to title to them accrued.   When he should have obtained them his acquisition would be a purchase and he a purchaser, even in the popular signification of the terms.

It is contended that these lands were not *held* in any legal sense under the capitol contract.   "As a technical term 'held' embraces two ideas—that of actual possession of some object of dominion or property, and that of being invested with legal title or right to hold or claim such possession."   7 S. C., 99, Witsel v. Charleston, cited in Winfield's Adjudged Words and Phrases.

By the terms of the capitol contract possession of the land was not conceded by the State.   If the contractor claimed it, it does not appear that he could have obtained it.   The contract was silent upon the subject.   It provided for his earning the lands, and that when earned the title should be made to him.

It may be questioned whether the State officials had any power to lease the lands (The State v. Day Land and Cattle Co., 71 Texas, 252).   However, the lease did convey the possession.   This use of the land was of value and formed part of the consideration from the State to Taylor in the supplemental contract.   It is also evident that no greater estate in the lands would pass by the lease by reason of the want of authority to make it, nor would the holding under it be more onerous from the absence of such authority.

Until the making of the supplemental contract and lease Taylor neither had the possession nor the right to it.   He did not have the legal title to the lands until the State issued such title; nor did he have the equitable title until earned, when an equitable claim to them would arise, and with such claim would be the right to possession.

The tenure of lands held by contract of purchase belonging to the State applies completely to a large class of land holders under the laws providing for the sale of the public school, university, and asylum lands. Purchasers of these lands held by contracts stipulating the price and time

of payment, title to be acquired upon payment. By these sales the settler without means is enabled to buy, the State securing settlers upon the lands, interest upon the price, and taxes. In these sales the purchaser in all cases had the right to possession and in most cases took actual possession.

Contrasting these contracts for the purchase with the capitol contract the difference is evident as to the quantity and quality of the estate obtained by the parties dealing with the State. In the one there is complete ownership, conditioned only upon the payment of the stipulated purchase money; in the other none of the rights of property are given— only the right to earn the lands and to the title when earned. The State could dictate the terms of sale in both cases. Nothing passed against the State but what was conceded by the terms of the several contracts.

It is reasonable that the article 4691 referred to the lands which answer fully to the description. The lands claimed by Taylor do not answer to the description as *held under* any such contract as expressed in this section. It seems that the absence of any holding or tenancy of the lands in any legal sense would be fatal to the claim for taxes under the statute.

Considering together the facts constituting the grounds for the claim for taxes upon these lands, we have: 1. The contract for the building of the new capitol, that being the main object, the lands to be used in payment when earned. 2. In this contract the right of Taylor to the possession is not given, and under it there was no holding in fact. 3. Under the lease of July, 1885, possession was conceded to and was taken by Taylor, and during the years for which the taxes were collected the lands were held under the so called lease. 4. Until earned Taylor had no title, legal or equitable, in the lands; when earned an equitable claim would arise to them. And finally, contrasting the tenure of these lands with the estate of the purchasers from the State under contracts as provided upon the sales of the public school and other lands belonging to the State, we conclude that these lands were not subject to taxation as lands held under a contract for their purchase.

The lands were held under the lease contract, but the taxes are not claimed upon the value of the term of the lease.

The judgment should have been for the plaintiff.

Judgment reversed and here rendered for the amount sued for and costs.

　　　　　　　　　　　　　　　　　　　*Reversed and rendered.*

Opinion December 21, 1888.

Motion for rehearing was overruled at Galveston Term, 1889.