52 So.2d 137 (1951)
GAY
v.
JEMISON et al.
Supreme Court of Florida, Division A.
April 20, 1951.
Rehearing Denied May 22, 1951.
Richard W. Ervin, Atty. Gen., Fred M. Burns and John A. Madigan, Jr., Assts. Atty. Gen., for petitioner.
Isler & Welch, Panama City for respondents.
THOMAS, Justice.
The plaintiffs, respondents now, contracted with Tyndall Field Military Housing, Inc., a private corporation organized under the laws of Tennessee, to construct approximately 450 family dwelling units on lands leased to the corporation by the United States Government for seventy-five years.
This suit was brought against the Comptroller to enjoin the collection of taxes levied under Chapter 212, Florida Statutes, 1949, and F.S.A., "Florida revenue act of 1949," on materials to be used in the construction of the buildings.
The chancellor awarded the plaintiffs a decree, and we must decide whether the tangible personal property that will find its way into the houses to be built for the use primarily of military personnel, pursuant to the Acts of Congress of August 5, 1947, and August 8, 1949, 10 U.S.C.A. § 1270 et seq., and 12 U.S.C.A. § 1748 et seq., respectively, is taxable under the general provisions of Chapter 212, supra, or is exempt under Section 8(3) of that chapter.
Turning to the first of these Federal laws, we find that a lessee's interest created under it shall, by express language, be subject to state and local taxation; also that any lease executed according to its provisions shall contain a stipulation that if any of the property involved is so taxed "the terms of such lease shall be renegotiated." The second Federal act, Subchapter VIII, Section 1748f, bears the injunction that nothing in it shall be interpreted to exempt real property from taxation "to the same extent * * * as other real property is taxed."
In connection with these, we observe also that in 4 U.S.C.A. § 105, is found the provision *138 that no one shall be relieved from the payment of sales taxes on the ground that the transaction occurred within a Federal area and that a state has full jurisdiction to levy such taxes to the same extent "as though such area was not a Federal area."
We point out these provisions particularly to show the attitude of the National Congress with reference to the levy and collection of taxes within areas such as the one with which we are now dealing. Of course the ultimate decision must depend upon the construction of the exemption in the revenue act of "sales made to contractors of tangible personal property going into and becoming a part of public works and projects" owned by a government or governmental unit, that is, by "the United States government, the State of Florida [and] any county or municipality * * *."
To state the question succinctly: Will these buildings, to be constructed pursuant to the lease which we shall now describe, become a part of public works or projects owned by the United States Government?
We have already said that the lease is to extend for a period of seventy-five years. By its terms, the cost and capital outlay of the lessee and the interest paid on a loan it secured to finance the project are to be allocated over the "useful life" of the improvements "during the term of the lease as a deduction to which Lessee is entitled from its gross rental income." Comparing the probable useful life of the buildings with the time for which the lease is to extend, the question immediately arises in one's mind whether the useful life of the buildings will not have ended by the time the lease expires. We have already said also that the buildings are for the "primary" use of military personnel. It may be assumed that this is the chief purpose of the installation; however, the lease contains the statement that the property may be occupied by civilian as well as military personnel of the army, marine corps, and air force; and, further, that upon failure of the commanding officer of the field to designate persons of those classifications to tenant any units within a certain length of time after they become vacant, the lessee may then rent to parties who do not fall in any of these categories.
It is an obligation of the lessee to comply with all ordinances with reference to licenses and permits to do business and it is its privilege to engage public utility companies to provide water, fuel, telephone service, and electric power for the use of the occupants of the units. The lessee is bound to maintain the property in a state of good repair and to save the government harmless against all actions and suits springing from any failure in this respect.
The lessee is required at its own cost to insure the buildings and to restore any of them damaged by fire, but if a building is wholly destroyed, then the lessee has the right to determine that the building shall not be reproduced.
The lessee must pay "all taxes, assessments, and similar charges which, at any time during the term of [the] lease, may be taxed, assessed or imposed upon the Government or upon the Lessee with respect to or upon the leased premises."
The bare title of the property, of course, remains in the United States Government, and for its use the government receives but $100 a year.
Bearing in mind what we consider the evident intent of the Congress of the United States, and construing the language of the contract between the Government of the United States and the lessee, we cannot arrive at the chancellor's conclusion that this housing project when completed will be a public work owned by the United States Government.
It is true that the government, through its military, retains a certain supervision over the area where the project is located and has a preference with reference to accommodations for its personnel, but taken as a whole, the arrangement is in reality one affording a source of income to the lessee, and we think it is obvious that any money withheld from the state by applying the exemption would not benefit the national exchequer but would reach the pockets *139 of private citizens. The corporation borrows the money, takes the risks, bears the cost of maintenance and insurance, receives the income from rentals, and in case of total destruction of a building by fire, keeps, if it chooses, the money paid by the insurance company to cover the loss. The corporation must pay the debt it incurs to finance the installation, and certainly any profit for a period of seventy-five years belongs to it. Meanwhile as a part of its expenses there is the nominal payment of $100 a year to the government as lessor.
We believe the Comptroller's position is correct and that the materials furnished by the contractor will not become a part of a government work but of buildings of a private enterprise, and therefore are subject to state tax.
The petition is granted and the order denying the motion to dismiss is quashed, with directions to dismiss the bill of complaint.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.