No. 6504.

W. C. DAUGHERTY, TAX COLLECTOR, ETC., *v.* JAMES M. THOMPSON.

1. TAXATION OF REAL ESTATE.—The general rule is that the owner of real estate leased is taxed upon the entire value of the property. This satisfies the constitutional requirement that all property in this State, whether owned by natural persons or corporations, other than muni cipal, shall be taxed in proportion to its value.

2. LEASEHOLD TAXATION.—It would seem where the leasehold is taxed that its value should be deducted from the taxable interest of the owner, otherwise double taxation would be imposed, not to be presumed when the law can be otherwise construed.

3. SAME—STATUTE CONSTRUED.—By article 4691, Revised Statutes, lease hold estates are made taxable and the valuation is provided for in article 4692, to be the value of the leasehold estate.

4. CONSTITUTIONAL EXEMPTION FROM TAXATION.—Section 9, article 11 and section 6, article 7 of the Constitution exempt from taxation lands held by counties for public free school purposes, and such exemption limits the power of the Legislature.

5. SAME.—The Constitution forbidding the taxation of the lands it forbids the taxation of an estate therein less than the fee, whether imposed upon the county or its lessee.

6. COUNTY SCHOOL LANDS are not subject to taxation while owned by counties, whether the lands be leased or not.

APPEAL from Frio. Tried below before Hon. D. P. Marr.

Appellee filed his original petition on the third of June, A. D. 1887, against appellant as sheriff and tax collector of Frio county, setting forth that in the year 1880 appellee had leased for a term of ten years therefrom the four leagues of

school land belonging to Frio county, and that he had rendered the same for taxation as a leasehold on the fifteenth day of June, A. D. 1886, to the assessor of taxes of Frio county, and that the assessor refused to receive said rendition, and thereupon said officer assessed the lands in the name of the appellee and as the property of the appellee, and then placed said assessment upon the unrendered rolls of Frio county, and no affidavit having been made by appellee resisting or contesting such assessment, no action whatever was taken upon said assessment by the board of equalization of Frio county. Appellee alleged that the taxes upon his rendition were sixteen dollars and fifty cents, and that the amount claimed upon the assessor's rendition was two hundred and nineteen dollars and eighteen cents, and that the appellant had levied upon his property to satisfy the same, and prayed for an injunction restraining him from making sale, and expressly alleged that Article 4691, Revised Civil Statutes, was unconstitutional. Upon a final hearing the court perpetuated the injunction, rendered judgment in favor of appellee and against appellant, and from this judgment appellant appeals. The opinion contains a further and sufficient statement.

*Ellsbery L. Lane,* for appellant: Article 4673, with its several subdivisions, manifests plainly the intention of the legislative mind to make all leasehold interest in land exempt by law from taxation in the hands of the original owner, subject to taxation in the possession of the lessee. At common law a lease of land for a term of years—was assignable—was a chattel, and passed to the administrator on the death of the lessee. In this county we have instances of long terms of several hundred years, but they are treated altogether as realty. (See Gay's Cases, 5 Mass. Rep., 419; Breuster v. Hill, 1 N. H. Rep., 350.) In Ohio, by statute of 1821, lands held by a tenure of a lease for one hundred years were to be considered as realty. (Chase's Statutes of Ohio, vol. 2, 1185.) I submit that a leasehold of land for a term of less than three years is property subject to execution and sale.

Article 4710, Revised Civil Statutes, describes forty-five different species of property, *eo nomine,* subject to taxation. The forty-sixth subdivision of said article requires the assessor to list and value all other property not enumerated in these

forty-five subdivisions.  Then a leasehold interest in land for a period less than three years, being property, is subject to taxation.  The court below, in effect, held that a lease of land for less than three years was not subject to taxation, and that a leasehold interest in land for a period of three years or more was subject to taxation under article 4691, controlled and qualified by subdivision 4 of article 4692.  This can not be the proper construction of the two statutes.  Article 4691 expressly declares that leasehold interest in land for a period of three years or more shall be considered for all purposes of taxation as the property of the person so holding the same.  This same article subjects the land—if sold or contracted to be sold—to taxation, though not one cent of the purchase money is paid, and is not to be paid until the expiration of a long term of years, and the legal and equitable title thereof still remaining in the original owners.  If it was competent for the Legislature to provide for the taxation of this land on a contract for sale—in the hands of the purchaser—was it not also competent for the Legislature to provide for its taxation as land, upon a lease for a period of three years or more, and as the property of the lessee?  Is there any difference in principle in the one case or the other?  whether it is a contract for the sale of the land or a lease of the land?  This article provides for either or both cases; provides that the land shall be subject to taxation for all purposes as the property of the possessor.

To harmonize these statutes, so that each article may stand, subdivision 4 of article 4692 must refer to leasehold interest in the land for a period of less than three years.  There may be a seeming injustice in requiring a leasehold interest in land, for a period of three years or more, to be taxed as land and as the property of the possessor, but it is more seeming than real upon an examination.

This lease was executed in 1880 for a period of ten years.  Had the lease here been for a period of fifty or sixty years then there would be no seeming injustice in the taxation of the land as the property of the lessee; in all probability this suit never would have been brought.

All contracts between parties have reference to the existing law of the land.  The statutes regulating or affecting the particular property which is the subject matter of the contract, enter into and make a part of such contracts.  Article 4961 was in force at the execution of the contract for the lease in

this case—then article 4961 entered into and made one of the covenants of that contract.

We have frequent instances of individual owners leasing lands for a certain sum per annum and the payment by the lessee of all State and county taxes thereon. We have likewise instances of individual owners leasing lands for a certain sum per annum and the lessor paying the State and county taxes thereon. In the first example the lessor gets a less sum from the lessee as rent; in the second example the lessor gets a greater sum from the lessee as rent. In this case the appellee, by the statutes in force at the execution of the lease was to pay the State and county taxes on the land, and as land and as his own property. Frio county received a less sum for the annual rent of this land than it would have received had it not been for this statute, which entered into and made part of this contract. The payment of the State and county taxes on this land and as land by the appellee, was a part of the consideration of the lease, and now he seeks to avoid his contract in part by resort to an injunction, without any allegation of fraud or mistake.

Has the Legislature the power to classify these lands so that a leasehold interest therein for a period of less than three years shall be subject to taxation as personalty, and that a leasehold interest in the same for a period of three years or more shall be subject to taxation as land and as the property of the lessee? Under our form of government, State Legislatures, like the English Parliament, are almost omnipotent. Their powers are only limited by express prohibition; what is not forbidden, what is not prohibited in the organic law, they can rightfully do. We look in vain in our State Constitution for a prohibition against the action of the Legislature in classifying for the purposes of taxation leasehold interests for a period of less than three years in lands of this character as personalty and for a period of three years or more as the land itself.

*James S. Hogg*, Attorney General, and *R. H. Harrison*, Office Assistant, for appellant: The term "property" includes both real and personal property. (Rev. Stats., art. 3140.) It signifies things and rights considered as having money value, especially with reference to transfer or succession, and to their capacity of being injured. It includes not only ownership, estates and interests in corporeal things, but

also rights to such, as a beneficial right in or to a thing. (2 Rapalje Law Dict., 1024.)

When applied to land it comprehends every species of title inchoate or complete. It embraces those rights which lie in contract; those which are executory as well as those which are executed. It embraces the land itself; all buildings, structures and improvements thereon; and all rights and privileges belonging or in any wise appertaining thereto. (4 Peters, 511; 9 Peters, 134; Rev. Stat. of Texas, arts. 4670 and 4691.)

Under the Constitution of Texas all property is subject to taxation, and no property can claim immunity from taxation except that expressly named in the Constitution, and any law exempting other property from taxation is void. The property described in plaintiff's bill is not named among the exemptions. (Const., art. 8, secs. 1 and 2; 34 Cal., 433; 35 Cal., 677.)

The occupancy of and the right to the possession, use and enjoyment of land, is "property," within the meaning of the Constitution and law levying a tax on all property, real and personal. (Rev. Stat. of Texas, art. 4670; 30 Cal., 655; 31 Cal., 146; 37 Cal., 54; 58 Cal., 146.) And that, too, though the legal title remains in the State. (Rev. Stat. of Texas, art. 4691; 3 How., 441; 4 Wallace, 210; 3 Nebraska, 17; 5 Nebraska, 399; 17 Kans., 320.) Nor is land so held and used the "exclusive property of the State," because it retains the legal title to same. (15 Kans., 154, and authorities last cited.)

Lands held under contract of purchase or under lease from the State are subject to taxation. (Rev. Stat. of Texas, art. 4691; 3 Nebraska, 17; 15 Kans., 154; 17 Kans., 320; 3 How., 441.)

So much of article 4691, Revised Statutes of Texas, which attempts to limit the right of the State to tax leaseholds to those of a term of three or more years, is in contravention of the State Constitution and is void. A leasehold in lands is "property" within the meaning of the Constitution, and it is subject to taxation, no matter of what duration. (Const., art. 8, secs. 1 and 2; 34 Cal., 433; 35 Cal., 677; 4 Peters, 511, and authorities cited under propositions 8 and 9.)

A leasehold of lands is a right and privilege in and to said lands within the meaning of article 4670, Revised Statutes of Texas, subjecting all the rights and privileges belonging or in any wise appertaining to land to taxation.

*W. T. Merriweather*, for appellee, cited Blessing v. City of Galveston, 42 Texas, 654; Hilliard on Injunction, 463; Ottowa

v. Walker, 21 Illinois, 610; Court v. O'Conner, 65 Texas, 334; George v. Dean, 47 Texas, 84; Hardesty v. Fleming, 57 Texas, 400; Cooly on Taxation, 288, 285.

STAYTON, CHIEF JUSTICE. The appellee leased the four leagues of school lands belonging to Frio county. The lease commenced in June, 1880, and ends in June, 1890. On June 16, 1886, he rendered his leasehold to the assessor of the county for assessment for taxes for that year, valuing it at two thousand dollars; but he declined to render for taxation the land at its value, as under the law he should have done had he been the owner of the fee. The board of equalization was then in session, and the assessor submitted the rendition offered by appellee to it. The assessor did not receive the rendition made by the appellee, when offered, but stated that he would lay the matter before the board of equalization, which he did; but it seems not to have acted upon the matter. One member of the board, however, stated, when the matter was presented, that nothing could be done by the assessor other than to follow the instructions given by the Comptroller. The assessor then assessed the land against appellee as though he had been its absolute owner, and valued it at twenty-six thousand five hundred and eighty-six dollars, on which the taxes, State and county, amounted to two hundred and nineteen dollars and eighteen cents. The assessment was made as of unrendered land, and there was no application made by appellee to have it corrected, as to valuation or otherwise, by the board of equalization. The appellee tendered to the tax collector the sum of sixteen dollars and fifty-six cents, which he deemed to be the sum due for taxes on his leasehold estate, which was refused, and the tax collector then levied upon personal property supposed to be sufficient to pay the taxes claimed.

To restrain him from selling the property so seized this suit was brought, in which an injunction was granted that on final hearing was perpetuated, the appellee having paid into court seventeen dollars and fifty cents, the sum found to be due by him on his leasehold interest in the four leagues of land.

The assessment complained of was made in pursuance of general instructions from the Comptroller to assessors; and the tax roll, which showed the assessment as of unrendered lands, was approved by the county commissioners court.

The appellee owned other property in the county subject to

taxation, but it does not appear whether he had paid the taxes on that or not. As to this no question was made by the pleadings of either party, but no relief is asked except such as is claimed by reason of the fact that the tax collector was seeking to collect a tax based on the valuation of the leased land and not on the value of the leasehold.

No demurrer to the petition was urged, and in this state of the record no other question than that of the liability of the appellee to pay taxes on the land, for the year, as absolute owner, need be considered. That is the question in the case, and its solution depends upon the construction of articles 4691 and 4692, Revised Statutes.

Article 4691 provides that "property held under lease for a term of three years or more, or held under a contract for the purchase thereof, belonging to this State, or that is exempt by law from taxation in the hands of the owner thereof, shall be considered for all purposes of taxation as the property of the person so holding the same, except as otherwise specially provided by law."

The fourth subdivision of article 4692 provides that "taxable leasehold estates shall be valued at such price as they would bring at a fair voluntary sale for cash."

There is but one other provision of the statute having application to the taxation of leaseholds, and that is found in article 4673, Revised Statutes, which relates to exemptions from taxation. That article is as follows: "The following property shall be exempt from taxation, to-wit: 1. Public school houses and houses used exclusively for public worship; the books and furniture therein, and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit; all public colleges, public academies, all buildings connected with the same, and all the lands immediately connected with public institutions of learning; and all endowment, funds of institutions of learning not used with a view to profit; and all buildings used exclusively and owned by persons, or associations of persons, for school purposes. This provision shall not extend to leasehold estates of real property held under the authority of any college or university of learning."    *    *    *

"6. All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions, not leased or otherwise used with a view to

profit, and all moneys and credits appropriated solely to sustaining such institutions."

All these statutory provisions must be construed in the light of the constitutional provisions applicable to taxation. Article 4673, was doubtless enacted under power expressly conferred on the Legislature to exempt certain property from taxation, by section 2, article 8, of the Constitution. That section of the Constitution seems to apply to property owned by persons or corporations in private right, but which from the use to which it is applied is in a qualified sense deemed public property. Leases of such property for a purpose not carrying the exemption from taxation, would doubtless be embraced in article 4691, Revised Statutes, and therefore subject to taxation against the holder of the leasehold if it be for a term of three or more years. Such property, if leased for a term less than three years, for a purpose not carrying the exemption, would be subject to taxation, but in the absence of a statute so directing, such a leasehold would not be taxable against the lessee.

The general rule is that the owner of real estate leased is taxed upon the entire value of the property and this satisfies the constitutional requirement that "all property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value."

While such property leased for a term of three or more years, for a purpose not carrying the exemption, would become subject to taxation at its full value, yet the Legislature has power to impose the tax on the value of the leasehold on the lessee; but, in such case, in valuing the real estate for taxation against the owner it would seem that the value of the leasehold should be deducted, for otherwise there would be double taxation which, if permissible, will not be presumed to have been intended in the absence of a law that will not bear any other reasonable construction. Property exempted from taxation in the hands of its owner while used for the purposes on account of which the exemption is given, will doubtless become subject to taxation, if leased, for any period, to be used for a purpose which does not itself give the exemption, unless in cases in which the exemption is given by the Constitution or under a contract that would be impaired by taxation.

While this is true it does not follow that a lessee will be liable to pay taxes on the leasehold unless the law so provides.

The only law providing that a lessee shall pay taxes on leased property is found in article 4691, Revised Statutes, which determines what leasehold estates shall be taxable.

Subdivision 4, of article 4692, Revised Statutes, can have application to no other leasehold estates than such as are made taxable by the preceding article, for in all other cases, in the absence of a statute directing to the contrary, the owner of the real estate must pay taxes on the entire value of the land, whether leased or not.

In cases to which article 4691 is applicable it must be held that it was the intention of the Legislature only to impose on the lessee a tax based on the value of the "taxable leasehold estate" and not to impose upon him a tax based on a sum equal to the full value of the real estate, to be ascertained, as provided in 1, 2 and 3, subdivisions of article 4692, Revised Statutes.

If article 4691, Revised Statutes, has application to school lands granted to the several counties in this State, this view would be conclusive of the rights of the parties to this suit; for the assessment made against the appellee was upon property which he did not own and for taxes for which he was not liable.

He proposed to assess for taxation the property—the taxable leasehold estate—for which it is assumed he was liable, and this assessment was rejected.

The assessor then proceeded to assess against him the land itself at its full value, and for this there was no authority.

There is another view of the question, however, which, to our minds, is conclusive that county school lands are not embraced in article 4691, Revised Statutes.

The language of that statute is broad enough to embrace leases of lands owned by counties and held for school purposes, known as county school lands; and the power of the Legislature to impose a tax upon them, whether leased or not, unless restrained by the Constitution, could not be questioned, even though the declaration that "all property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value," does not make such taxation mandatory, for section 17 of the same article declares that "the specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require other subjects or objects to be taxed in such manner as

may be consistent with the principles of taxation fixed by this Constitution." (Const., art. 8, secs. 1 and 17.)

It will be observed that section 1, article 8, of the Constitution does not require property belonging to municipal corporations to be taxed, and both the Constitution and statutes recognize counties as municipal corporations. (Constitution, art. 11; art. 676, Rev. Stat.) As before said, section 2, article 8, of the Constitution, gave to the Legislature power to exempt property held in private ownership but used for purposes which give to it a public character. Section 9 of article 11, however, exempts from taxation "property of counties, cities and towns owned and held only for public purposes, such as public buildings and sites therefor, fire engines and the furniture thereof, and all property used or intended for extinguishing fires, public grounds, and *all other property devoted exclusively to the use and benefit of the public.*" What the Constitution exempts from taxation the Legislature has no power to require to be taxed.

The Constitution declares that "all lands heretofore or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands, in whole or in part, in manner to be prescribed by the commissioners court of the county. * * * Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; * * * and the counties shall be responsible for all investments; the interest thereon and other revenue, except the principal, shall be available fund." (Const., art. 7, sec. 6.)

In view of the provisions made by the Constitution of this State for the establishment and maintenance of public free schools, no one would contend that lands held by counties for that purpose were not held solely for a public purpose. Lands so set apart and solemnly appropriated for a purpose so essentially public as is the maintenance of public free schools, must be said to be "property devoted exclusively to the use and *benefit* of the public." Such property the Constitution exempts from taxation.

The provisions of the Constitution to which we have referred

bear evidence of an intention that the counties should sell or otherwise dispose of their school lands so as to raise, if they deem it proper, a revenue otherwise than through the interest that would accumulate on the principal for which the lands might sell; and that this revenue, whether by way of interest or otherwise derived, should from year to year constitute an available school fund; the lands, or the price for which they should sell, to remain a permanent fund.

County school lands, when leased to raise an available school fund, are as exclusively devoted to the use and benefit of the public as would they be if covered with school houses; and the Constitution forbids the taxation of the means through which such lands may be made to yield a revenue, without sale, as fully as does it forbid the taxation of the lands. Forbidding the taxation of the lands, it forbids the taxation of an estate less than the fee, whether imposed on the county or its lessee.

If the constitutional provisions to which we have referred did not exist, looking to the policy which this State has steadily pursued in granting lands to counties for educational purposes, it could not well be held that the Legislature intended, by article 4691, Revised Statutes, to impose a tax on school lands owned by counties, even when leased; for taxes levied on such lands while owned by counties, whether imposed on the counties or their lessees, would but diminish the rental value of such lands, which it is not reasonable to suppose was intended, when the sole purpose for which such liberal donations were made was to furnish the counties with a school fund.

We are of the opinion that lands granted to the several counties of this State for school purposes are not subject to taxation while owned by the counties, and so whether they be leased or not; and the judgment rendered by the court below must be affirmed.

It is so ordered.

*Affirmed.*

Opinion delivered June 12, 1888.