

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 27, 1962

Mr. Jack N. Fant
County Attorney
Room 201
City-County Building
El Paso, Texas

Opinion No. WW-1423

Re: Whether certain lots and
the permanent improvements
and personal propertie.
thereon are exempt from
ad valorem taxes as a pub-
lic library.

Dear Mr. Fant:

You have asked the opinion of the Attorney General as to whether certain town lots in the City of El Paso, Texas and the permanent improvements thereon together with the personal properties therein are exempt from Texas ad valorem taxes.

Such exemption is claimed by the owner of these properties on the basis that the properties are a public library and exempt from ad valorem taxes by Article 7150, subd. 8, Vernon's Civil Statutes which is as follows:

> "The following property shall be
> exempt from taxation, to-wit:
>
> 8. Public libraries. -- All public
> libraries and personal property be-
> longing to the same."

I.

### PERTINENT FACTS

A. The Real Estate and Improvements

The real estate in question is lots 17, 18, 19 and 20 in block 69 of Franklin Heights Addition to the City of El Paso, Texas. This realty, in the aggregate, fronts 100 feet on Montana Street and is bordered on one side by Brown Street to a depth of 120 feet. The property is zoned as apartment. Improvements consist of a two-story building (constructed as a private dwelling) with a full basement; the building is approximately 56 feet by 49 feet in size. On the rear portion of the tract of land is a two-story combination garage and servant's quarters. The improvements are approximately fifty years old and are not modern, though they have been remodeled to some extent to meet the needs of the present owner and user.

The market value of the realty and permanent improvements has been appraised at $42,200.

This property is at a location which is conveniently accessible to the public as a library.

B. Ownership of the Properties under Consideration

Title to the realty and permanent improvements is vested in fee in the El Paso County Medical Society, a private Texas corporation which is now subject to the Texas Non-Profit Corporation Act. The purpose clause of the charter of this corporation is as follows:

> "The purposes of this corporation shall be to associate in a single body the duly licensed and regular practitioners of medicine in El Paso County, Texas, for the purpose of promoting medical knowledge, elevating the standard of medical education, encouraging free intercourse among its members, and inculcating principles of professional ethics protecting its members against impositions, establishing a library for the use of its members, dispensing charity among the worthy sick, and assisting in upholding and enforcing the laws enacted to protect the public against any who may offer to practice medicine in violation of the laws of the State of Texas." (Underscoring added).

The realty and improvements have vested under the terms of the will of S. T. Turner, deceased, who devised the property to the El Paso County Medical Society, its successor or successors,

> ". . . to use as a club house, library or any other useful purpose to which they may from time to time desire to appropriate it, to be known as the Turner Home of the El Paso County Medical Society."

C. Facts Pertinent to the Operation of the Property as a Public Library

The following more pertinent and controlling facts have been furnished by you:

"1. Floor Space 7248 Square Feet. 4 rooms and hall on each floor.

"1st floor: Library Space 48 ft by 17½ ft. Hall 52 ft by 12 ft. Reading Room 25 ft x 17 ft.

"Kitchen and two pantries 27 ft by 17 ft. Powder room and storage room 4 ft by 17 ft.

"2d floor: Assembly room 52 ft by 17½ ft. Hall 52 ft by 12 ft. Ladies Lounge, bath and closet 25 ft by 17 ft. Storage rooms 27 ft by 17 ft.

"Basement: Furnace room. Storage room for books and periodicals 884 Sq. ft. Hall 624 Sq. ft. Storage rooms used by the City Museum 52 ft by 17½ ft.

"2. About 1945 sq ft used for library. 1265 sq ft for material and reading room. 680 sq ft used for storage. Librarian's office is in the library proper. About 2,000 sq. ft used by City Museum for storage. (This is donated by the Society.) Kitchen and pantries, furnace room and halls.

"3. The El Paso County Medical Society meet once a month from 6 p.m. to 9 p.m. The Ladies Auxiliary meet during the winter months from 10 a.m. to 12:30 p.m.

"4. The library is used by students from Texas Western College, the general public and doctors. The public and students use it more than the doctors. It is opened from 1 to 5 p.m. Monday thru Friday.

"5.  The library has never been closed to the general public since it was originally opened over 10 years ago.

"6.  The librarian does not hold a degree in library science.  The El Paso County Medical Society pays her $150.00 monthly.  Hours are from 1 to 5 p.m. Monday thru Friday.  The librarian takes care of the telephone for the Medical Society, keeps up with the membership and dues.  This would require about one hour an afternoon.

"7.  The library is located on a corner lot and the grounds are used by the puclic when needed.

"8.  Four years ago, all of the out-of-date books were discarded and they have been replaced with up-to-date later editions.  A few of the old books were kept.  At the present time, about 20% of the books are out of date except for historical purposes and most of these have definite historical value.  The periodicals are kept up-to-date with no missing issues.  When the periodicals are bound, if there are any missing issues, they are replaced to make the bound volumes complete."

9.  You state that the usual library indices and cross references are available and that the books are catalogued.

10.  You state that the property is "centrally located in an ideally accessible location".

"11.  Several people besides the doctors come in every afternoon between 1 and 5 and use the library material.  The library is used principally by students in our local college and high schools.  Some other layman use it.  The doctors themselves use it least of all.  It is very difficult

to say what percentage of the library
material has been used by anyone other
than doctors within the last year.  It
would probably be about 25% (doctors'
use) but this is a rough estimate.

"12.  The library has been adver-
tised at our local college, Texas Wes-
tern College.  The Chairman of the
Biological Sciences Department there
has made this known to the students
by verbal announcements and by a notice
on the bulletin.  The Public Library
also sends many students to our medical
library.  Only the Public Library is
advertised in the Yellow Pages of the
Telephone Directory."


II.

## OUR OPINION BASED ON THE FOREGOING FACTS

Our opinion is that neither the realty, permanent im-
provements nor personal properties under consideration are
exempt from State ad valorem taxes by reason of being a pub-
lic library.

The pertinent constitutional provision which authorizes
exemption of the kind of properties under consideration is
Article VIII, Section 2.  The relevant portion of this article
reads as follows:

".  .  . the legislature may, by
general laws, exempt from taxation
public property used for public
purposes; . . ."

Article 7150, subd. 8, V.C.S. effects the permissive
exemption authorized by Art. VIII, Sec. 2 (supra) as to pub-
lic libraries in the following language:

"The following property shall
be exempt from taxation, to-wit:

. . .
8.  Public libraries.  --  All
public libraries and personal pro-
perty belonging to the same."

The constitutional provision requires that a public library to be exempt must be, first, "public property", and second, that the public library properties must be "used for public purposes".

1.

We first consider whether the realty, the permanent improvements thereon and the personal properties comprising the library  and its furnishings are "public property" within the meaning of Article VIII, Sec. 2 of the Constitution.  The early case of Saint Edwards College v. Morris, Tax Collector, 82 Tex. 1, 17 S.W. 512 (1891) considered that portion of Art. VIII, Sec. 2 of the Constitution which we now have under consideration (which was in the identical language as now).  With reference to the nature of property as being "public property used for public purposes" the Court stated:

> "It can not be claimed that the property of appellant is public property used for public purposes, for to give it such character it is believed that the ownership should be in the State or some of its municipal subdivisions, and it may be that its use would have to be not only under their control but for a purpose for which the State or such municipal subdivisions are authorized to use property held by them for the benefit of the public." (Underscoring added).

See also Texas Turnpike Company v. Dallas County, 153 Tex. 474, 271 S.W.2d 400 (1954).

We are aware of the statements of our Supreme Court with reference to this Art. VIII, Sec. 2 of the Constitution made in Daugherty, Tax Collector v. Thompson, 71 Tex. 192 9 S.W. 99 (1888) wherein the Court stated

> "That section of the Constitution seems to apply to property owned by persons or corporations in private right, but which, from the use to which it is applied, is, in a qualified sense, deemed public property."

Later in that same case the Court reitterated this statement in the following language:

> "As before said, section 2, art.
> 8, of the constitution, gave to the
> legislature the power to exempt
> property held in private ownership,
> but used for purposes which give to
> it a public character."

This latter quotation from Daugherty v. Thompson is quoted in Lower Colorado River Authority v. Chemical Bank and Trust Co., 144 Tex. 326, 190 S.W.2d 48 (1945) (at page 51).

We reconcile these apparently contradictory statements by our Supreme Court in the following manner. The Daugherty case (supra) considered the taxability of school lands belonging to Frio County which were under a ten-year lease to an individual. The quoted statements from that case were made with reference to ownership of the lands by Frio County. In that respect the lands considered were owned by Frio County in its own private right. While these lands were public in that they were owned by the county, a political subdivision of the State, they also were private in that they were one property of Frio County, a public corporation. The case of Coyle v. Gray, 7 Houst. 44, 30 Atl. 728 (Court of Errors and Appeals of Delaware /law court of last resort_7 1884) makes this distinction clear wherein the Court said:

> ". . . The inhabitants of a city,
> who are in fact the corporators under
> a charter creating a municipality, are
> a portion of that general public which
> constitute a state. And they are also
> that particular public which consti-
> tute a municipality. The municipality
> may hold property in which all the in-
> habitants of a state or of a county may
> be said to have an interest in some
> respect, but not as owners or proprie-
> tors. And it may also hold property
> in which the inhabitants of the muni-
> cipality alone may properly be said
> to have an interest. Both classes of
> property are public, -- the one, as
> to the people of the whole state or
> county; the other, more particularly,
> as to the inhabitants of the munici-
> pality. It is only in this sense

that the words 'public' and 'private'
can with propriety be applied to such
property, when held by a municipality.
Although the property held for the
municipality is in fact public, as
common to all the inhabitants of a
city, it nevertheless may justly be
said to be private property, as being
such property as is exempt from being
taken or applied to any other public
use by the state, or by authority of
the state, without compensation being
made."  (at p. 733).

We believe the same interpretation was meant in Lower
Colorado River Authority v. Chemical Bank and Trust Co.,
(supra).

Our State Constitution nowhere provides for the exemption
from ad valorem taxes of property which is privately owned
although used for public purposes.  The Legislature could not
by Art. 7150, subd. 8, (supra) convert private property used
as a public library into public property.  In Texas Turnpike
Company v. Dallas County (supra) the Court stated:

". . . Public ownership, for tax-
exemption purposes, must grow out of
the facts; it is a legal status, based
on facts, that may not be created or
conferred by mere legislative, or even
contractual, declaration. . . ."
(at p. 402).

The following quotation from Davis v. City of Atlanta, 206 Ga.
652, 58 S.E.2d 140 (Ga.Sup. 1950) very clearly states this
principle.

"Under Board of Trustees v. City
of Atlanta, 113 Ga. 883, 39 S.E. 394
/ 54 L.R.A. 806 7, the fact that pri-
vately owned property is devoted ex-
clusively to a public use does not
thereby make it public property so
as to exempt it from municipal ad val-
orem taxation.  Indeed, not even leg-
islative enactment can make it such
nor so exempt it.  In that case the
court held unconstitutional an act of
the legislature which declared that

armory property shall be public pro-
perty and exempt from municipal and
other taxation.

"In that case the court said:
'It is claimed . . . the property is
used exclusively for public purposes
in maintaining the military company
known as the Gate City Guard, which
is a part of the regular volunteer
military forces of the state. That
private property is used exclusively
for public purposes does not change
the nature of the property, or the
title thereto, so as to convert it
into public property. . . . Private
property cannot be converted into
public property by the simple de-
claration of the general assembly;
and especially is this true when
the purpose of the declaration is
to relieve private property from a
burden which the constitution says
in unmistakable terms shall be borne
by it for the benefit of the public.'"

See also Attorney General Opinion No. 0-1621 (1939).

We believe the law is settled to the effect that real
estate and the permanent improvements thereon and personal
property therein to which neither the State nor any of its
political subdivisions nor agencies nor representatives have
any title, nor right of control under any form of grant vest-
ing in any such public entity a right of control over said
property, can be "public property" within the meaning of Art.
VIII, Sec. 2 of our State Constitution. As to the library
properties under consideration, the public has only access,
and that at the sufferance of the El Paso County Medical So-
ciety as its invitees. We have found no authority, in Texas
or in any other jurisdiction of the United States, which would
authorize property to which the public has this type of access
right only to be qualified as being public property for pur-
poses of being exempt from taxation.

2.

The properties in question must be "used for public
purposes" as provided in Art. VIII, Sec. 2 of the Constitu-
tion (supra).

As to whether a particular usage is a public purpose within contemplation of the above constitutional provision must be determined in each incidence upon the particular facts.  In Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033 (1934) the Court stated:

> "In discussing what is a public purpose, McQuillin on Municipal Corporations (2d Ed.) vol. 6, p. 292, sec. 2532, says:  'What is a public purpose cannot be answered by any precise definition further than to state that if an object is beneficial to the inhabitants and directly connected with the local government it will be considered a public purpose.'"

Again, in the case of A & M Consolidated Independent School District v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914 with reference to publicly owned property being used for a public purpose, the Court stated:

> "The property in question appears to be used for a public purpose.  It is used primarily for the comfort and welfare of the people, and all the public has the right to use it under reasonable and uniform regulations."
> (at p. 916).

However, the Courts have also well established what is not a public purpose.  The following two authorities are typical:

> "It is not all things which answer a public need or fill a public want that it is within the authority of the State to furnish for the people's use or support at the public expense."
> Waples et al v. Marrast, 108 Tex. 5, 184 S.W. 180 (1916).

> "It is well settled that there must be a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation which may prove beneficial or profitable

to some portion of the public."
(emphasis added).  River & Rail Termi-
nals, v. Louisiana Ry. & Nav. Co.,
171 La. 223, 130 So. 337 (La.Sup.
1930) (p. 340).

The specific limited exemptions stated in Art. 7150 V.C.S.
make certain the proposition that not the use only of properties
which promote the welfare of the public is a public purpose
which will exempt those properties from ad valorem taxes.  The
following usages of portions of the land and improvements under
consideration do not comport with the use of property for a
public library:  (1)  the two-story combination garage and
servants quarters, (2) about one-fifth (1/5) of the time of
the librarian spent in taking care of the telephone for the
Medical Society and keeping up with the Society's membership
and dues, (3) space used for storage by the City Museum and
(4) meetings by the El Paso County Medical Society and its
Ladies' Auxiliary.

Without a doubt, the library facilities furnished are
of benefit to the public; but the law is well settled that
not all benefits to the public are recognized in law as being
for public purposes in considering the properties as being
tax exempt.  Our opinion is that the El Paso County Medical
Society may not voluntarily and gratuitously and in its own
private capacity make available to the public the benefits
of its library and thereby make the library exempt from ad
valorem taxes.

### S U M M A R Y

The properties owned by the El Paso County
Medical Society furnished by it voluntarily to
the public as a public library, but to which
the public has access only at the sufferance
of the Society as its invitees, are not exempt
from ad valorem taxes as a public library un-
der Art. 7150, subd. 8, V.C.S. as "public pro-
perty used for public purposes" within contem-
plation of Art. VIII, sec. 2 of the Texas Con-
stitution.

Yours very truly,

WILL WILSON
Attorney General of Texas

By   W. E. Allen
Assistant

WEA:rk

APPROVED:

OPINION COMMITTEE
Morgan Nesbitt, Chairman

L. P. Lollar
Robert A. Rowland

REVIEWED FOR THE ATTORNEY GENERAL
BY:   Leonard Passmore