

THE ATTORNEY GENERAL
OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 30, 1971

Honorable J. Albert Dickie
County Attorney
Coryell County Courthouse
Gatesville, Texas 76528

Opinion No. M-897

Re: Exemption from ad valorem
taxes of property owned
by a non-profit corpora-
tion organized for the
purpose of promoting
industrial development
in Copperas Cove, Texas,
and contiguous trade area.

Dear Mr. Dickie:

You have requested that we advise you as to the taxability
of properties belonging to Copperas Cove Industrial Foundation,
Inc., hereinafter referred to as "Copperas", a non-profit corpor-
ation organized pursuant to the provisions of the Texas Non-
Profit Corporation Act.[1]  The corporate purpose is stated in
Article Four of the charter of Copperas:

"The purpose or purposes for which the corporation
is organized are:  Promoting industrial development
for and within said city of Copperas Cove, Texas, and
its contiguous trade territory and area, and with the
intent of exercising all of the general powers author-
ized by Article 2.02 of the Texas Non-Profit Corpora-
tion Act."

The charter also states that Copperas shall have perpetual dura-
tion.

Section 3 of the By-Laws of Copperas provides that no offi-
cer or director shall ever draw compensation and that any assets
held by Copperas at the time of corporate dissolution would
pass to a successor corporation or organization having a similar

---

[1] 3 V.C.S., Ch. 9, Art. 1396-1.01, et. seq.

-4368-

purpose and like exempt status.

With regard to the operation of Copperas, you have given us the following information in a letter pertaining to your opinion request.

> ". . . The initial assets of the corporation was obtained through the purchase of memberships, a list of which and the amounts donated is also enclosed. For each $100.00 membership entitles a member to vote. Contributions of less than $100.00 entitles the person contributing to a non-voting membership. Any single member is limited to the number of votes that he or it can cast, which is 5% of the total number of votes. This is a protection against large contributors, such as the Cove Bank, being able to control the organization.[2]
>
> There is a continuation of the solicitation of members. The membership is non-redeemable and cannot be resold to the corporation.
>
> The assets of the corporation consist approximately of $600.00 cash and a 51-acre tract of land, 3 or 4 acres of which lie within the city limits of Copperas Cove and the balance lying outside the city limits. The acreage within the city limits had previously been subdivided for residential purposes before it was purchased. It is not the intention of the corporation to subdivide for residential purposes, however, due to financial problems, the corporation is attempting to sell the city limit acreage. The property was purchased on the 24th day of November, 1969 from the Erby Wolfe Estate for $25,000.00, payable $5,000.00 down and $5,000.00 per year. Because of the lack of funds to pay the next payment of $5,000.00

---

[2] The membership list, as furnished us, shows that there are a total of 72 contributing members. 51 members are voting members. Of these 51, only five contributors have as many as five votes, the two largest of these contributors being the Cove State Bank which contributed $2,000.00, and an individual who made a contribution in the amount of $1,650.00.

it is necessary to sell the city limit acreage as above indicated.  At the present time there is a balance of $15,000.00 owing on the property.  No individual member may purchase any of the assets of the corporation except upon competitive bids.

There are no options to purchase or sell or purchase contracts existing at the present time.  The corporation is attempting to attract investors, and does intend to sell small tracts for the purpose of attracting business ventures.  One such instance and apparently the only one that continued any length of time was a garment factory that apparently was not located on the above referred to acreage, but was housed at another location.  The corporation paid approximately 6 months rent for this venture before it turned sour.  The nature of the activities of the corporation is contracting and carrying on correspondence with prospective businesses, and attending industrial and business seminars.  No expense is paid to individuals for attending these seminars nor is anyone in the corporation receiving expense money or a salary and this includes the attorney for the corporation.[3]

---

[3] The above described corporate activities are well within the powers conferred by Section 10 of the By-Laws which read, in part, as follows:

". . . Without prejudice to such general powers and the other powers conferred by statute, by the charter and by these by-laws, it is hereby expressly declared the board of directors shall have the following powers, that is to say:  (1)  To purchase, or otherwise acquire for the corporation, any property, rights, or privileges which the corporation is authorized to acquire, at such price or consideration and generally on such terms and conditions as they think fit; and at their discretion to pay therefor either wholly or partly in money, stock, bonds, debentures, or other securities of the Corporation;  (2) To create, make and issue notes, mortgages, bonds, deeds of trust, trust agreements and negotiable or transferrable instruments and securities, secured by mortgage or deed

. . . .

"There seem to be adequate provisions to prevent indiv-
idual members from profiting by being members of the
corporation and when taking into consideration the broad
base of membership and the general small amounts of con-
tribution and considering the corporation from all per-
tinent data it appears that the assets have been accu-
mulated from contributions made for the development of
the business of Copperas Cove as distinguished from
contributions made by investing in capital stock of a
corporation."

Three provisions of the Texas Constitution will be considered
here.

Article VIII, Section 1 provides, in part, as follows:

". . . All property in this state, whether owned by
natural persons or corporations, other than munici-
pal, shall be taxed in proportion to its value,
which shall be ascertained as may be provided by
law . . ."

Article XI, Section 9 provides, in part, as follows:

"The property of counties, cities, and towns, owned
and held only for public purposes, . . . and all

_____

(3 cont'd)  of trust on any real property of the corporation
       or otherwise, and to do every other act and thing nec-
       essary to effect the same;  (3) To sell or lease the
       real or personal property of the corporation on such
       terms as the board may see fit and to execute all deeds,
       leases and other conveyances or contracts that may be
       necessary for carrying out the purposes of this corpor-
       ation and  (4) To delegate any of the powers of the board
       in the course of the current business of the corporation
       to any standing or special committees or to any officer
       or agent, and to appoint any persons the agents of the
       corporations, with such powers (including the power to
       subdelegate and upon such terms as they think fit.)"

other property devoted exclusively to the use and benefit of the public shall be exempt . . . from taxation . . ."

Article XI, Section 9 is self-executing.[4]

Article VIII, Section 2 provides, in part, as follows:

". . . The legislature may, by general laws, exempt from taxation public property used for public purposes . . . and institutions of purely public charity . . ."

Article VIII, Section 2 is permissive in nature rather than self-executing, and is dependent for its effectiveness upon the statutes enacted in pursuance to its authorizations and in compliance with its limitations.[5]

Even though it is our opinion that Article VIII, Section 2 and the valid statutes thereunder are determinative of exemption in this case, we have set out the above quoted portions of Article VIII, Section 1 and Article XI, Section 9 because these provisions are so frequently inexorably intertwined in court decisions determining questions of taxability for ad valorem tax purposes.

We are aware of the ever-expanding scope of the terms "public" and "charitable" under applicable constitutional and statutory provisions effectuating exemption from ad valorem taxes. Although the progression has been largely legislative, it has embraced both public and private property. The judicial branch has recently carefully preserved exemption for municipal property in the absence of legislative action subjecting it to

---

[4] A & M Consolidated Independent School Dist. v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914 (1945); Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48 (1945).

[5] City of Wichita Falls v. Cooper, 170 S.W.2d 777 (Tex. Civ. App. 1943, error ref.); Dickison v. Woodmen of the World Life Insurance Co., 280 S.W.2d 315 (Tex. Civ. App. 1955, error ref.).

tax,[6] and even more recently, upheld the constitutionality of legislation expressly recognized as broadening prior statutory concepts of exempt charities.[7]

Since Copperas is a private corporation, exemption cannot be obtained under the self-executing provisions of Article XI, Section 9;[8] but it is possible that properties belonging to Copperas might be exempt by statutes within the constitutional authorizations of Article VIII, Section 2 for "public property used for public purposes" or for "institutions of purely public charity." We will first consider that constitutional authorization for exemption of "public property used for public purposes".

In the early case of Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99 (1888), the Supreme Court declared at page 101:

"... that section of the constitution seems to apply to property owned by persons or corporations in private

---

[6] In City of Beaumont v. Fertitta, 415 S.W.2d 902 (Tex. Sup. 1967), the court held that since municipalities are excepted from the constitutional requirement of Article VIII, Section 1 that all property belonging to natural persons or corporations be taxed, the legislature could authorize taxation or not as it saw fit; and since the legislature had not seen fit to authorize the taxation of such properties but had provided for the taxation of long-term leaseholds on municipal property whereby taxes are paid by the lessors, municipal property, regardless of the use to which it is being put, is exempt from taxation.

[7] San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S.W.2d 743 (Tex. Sup. 1970).

[8] "... is the property 'publicly owned' so as to be exempt from taxes under Article XI, Section 9 of the Constitution? Public ownership, for tax exemption purposes, must grow out of the facts: it is a legal status based on facts, that may not be created or conferred by mere legislative, or even contractual, declaration." Texas Turnpike Company v. Dallas County, 153 Tex. 474, 271 S.W.2d 400,402 (1954).

right, but which, from the use to which it is
applied, is, in a qualified sense, deemed public
property." (Emphasis ours.)

This original interpretation was affirmed in Lower Colorado
River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190
S.W.2d 48 (1945) at page 49:

"Nor are we under any obligation, under the facts of
this case, to harmonize Art. XI, Sec. 9, supra, with
Art. VIII, Sec. 2, of the Constitution of Texas, which
declares that the legislature 'may, by general laws,
exempt from taxation public property used for public
purposes.' That duty likewise was performed for us
a long time ago by Chief Justice Stayton when he said,
in Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99, 102:
'As before said, section 2, art. 8 of the constitution,
gave to the legislature power to exempt property held
in private ownership, but used for purposes which give
to it a public character.' (Italics ours.) . . ."

And in 1963, the Supreme Court quoted with approval the
above set out portions of the above two opinions at page 910
of City of Beaumont v. Fertitta, 415 S.W.2d 902, supra, foot-
note 6, page 6.

This being the extent of the constitutional authorization
for exemption for "public property used for public purposes",
do any of the legislative enactments contained in Article 7150,
20 Vernon's Civil Statutes, provide an exemption which may be
deemed applicable to Copperas under the submitted facts? We
think not.

We will next consider the constitutional authorization for
exemption of "institutions of purely public charity". Many
court decisions have been concerned with the meaning of this
provision. However, we think an analysis of the recent decision
of our Supreme Court in San Antonio Conserv. Soc. Inc. v. City
of San Antonio, 455 S.W.2d 743 (1970) will resolve the question
under consideration.

In the Conservation Society case, the court was concerned
with the following facts. The Society was a non-profit corpor-
ation chartered for the purpose of preserving historical buildings

and sites, and, in fact, so operated.  The specific piece of property involved was Navarro House, named for a native Texas hero of the Texas Revolution, "who," said the court, "served Texas as one of its great public figures for many years."  The House was used as a museum for the benefit of all the public.

At the outset of the opinion, the court quoted that portion of Section 2 of Article VIII exempting "institutions of purely public charity", and pointed out that it was not until 1905 that the legislature undertook to define that phrase more fully.  Acts 29th Leg., Ch. 127, pp. 314-315 (presently Section 7, Article 7150, V.C.S.).  The court noted the subsequent amendments to Section 7, as well as the additional sections which have been added to Article 7150.  Specifically, the section under consideration was Section 20, the pertinent portions of which exempt ". . . any non-profit organization chartered or incorporated under the Texas Statutes for the purpose of preserving historical buildings, sites and landmarks, not leased or otherwise used with a view to profit, . . .".  The court stated that Section 7[9] was concerned with charity in the sense of almsgiving, but that Section 7 was not the exclusive basis

---

[9] Section 7 reads as follows:

> "7.  Public Charities.  All buildings and personal property belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions * * * not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not.  An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when funds, property and assets of such institutions are placed and bound

for a claim that an institution was one of purely public charity, and that the legislature in enacting Section 20 intended to add to the existing law and to change it.

After having thus ascertained the intent of the legislature, the court re-announced the rule stated in River Oaks Garden Club v. City of Houston, 370 S.W.2d 851 (Tex. Sup. 1963): "It /charity/ is public when it affects all the people of a community or state by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state." It was conceded that the whole public received benefits from the preservation of the House; therefore, the remaining question, said the court, was whether the Society in preserving it had assumed to a material extent an obligation or duty of the community or state. The court concluded that it had. In so holding, the court traced, at some length, at pages 746, 747, various constitutional and statutory provisions expressing the governmental obligation to preserve evidence of Texas' historical heritage from the time of the first Texas Constitution until the time of the decision. See also Cedar Park Water Supply Corp. v. Leander I.S.D. (Not yet reported. Decided, 3rd Ct. of Civ. Appls., June 16, 1971.)

There is no constitutional provision expressing governmental obligation to promote industrial development for cities or areas or even the state itself. There are statutory evidences of legislative concern about industrial development. A good example is Article 12.03, Title 28, Taxation-General, Vernon's Civil Statutes, exempting from franchise taxes "corporations having no capital stock and organized for the exclusive purpose of promoting the public interest of any county, city or town or other area within the state . . ." We are also aware of the fact that numerous non-profit corporations having corporate purposes similar to those of Copperas have been formed.

---

(9 cont'd) by its law to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons; * * *."

In the instant case, we do not question the bona fides of the incorporators of Copperas or its contributors. Their declared purposes are in the public interest and, insofar as is apparent, are entirely divorced from any direct personal gain. Nevertheless, in the absence of any legislation specifically exempting from ad valorem taxes property belonging to such corporations, we must assume that the legislature did not intend to accord them exemption. Finally, we are bound by the well settled fundamental principles that exemptions from taxation are never favored and that all taxing provisions will be strictly construed in favor of the taxing authorities and the state. We are therefore of the opinion that Copperas cannot obtain exemption from ad valorem taxes under any of the presently existing constitutional or statutory provisions.

### S U M M A R Y

Properties belonging to Copperas Cove Industrial Foundation, Inc., a non-profit corporation organized for the purpose of promoting industrial development in Copperas Cove, Texas, and contiguous trade areas, are not exempt from ad valorem taxes under any constitutional or statutory provisions of this State.

Very truly yours,

Crawford C. Martin
Attorney General of Texas

Prepared by Marietta McGregor Payne
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

James Broadhurst
Houghton Brownlee
S. J. Aronson
Jim Swearingen

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant